IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JESSIE J. BUITRON,           § | |
|     PLAINTIFF,           § | |
| § | |
| VS.           § | CIVIL ACTION NO. 4:06-CV-031-Y |
| § | |
| JO ANNE B. BARNHART,           § | |
| COMMISSIONER OF SOCIAL SECURITY,   § | |
|     DEFENDANT.           § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Jessie J. Buitron brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act. Buitron applied for disability benefits on December 10, 2002, (Tr. 107), with an amended alleged disability onset date of October 2001. (Tr. 41). He met the insured status requirements through at least the date of the administrative decision. (Tr. 26).

After the Social Security Administration denied his application for benefits both initially and

on reconsideration, Buitron requested a hearing before an administrative law judge (the "ALJ"), and ALJ J. Frederick Gatzke held a hearing on May 10, 2004 in Fort Worth, Texas. (Tr. 38-67). Buitron was represented by counsel. On June 24, 2004, the ALJ issued a decision that Buitron was not disabled because he had the residual functional capacity (RFC) to perform work activity at any exertional level of exertion so long as the work was simple, repetitive, and routine in nature, and required only incidental contact with the public and co-workers. (Tr. 34). The Appeals Council denied Buitron's request for review of his case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if a claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 2**

*Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 3**

C.  ISSUE

Whether the Commissioner's decision is consistent with applicable legal standards and supported by substantial evidence.

D.  ADMINISTRATIVE RECORD[1]

Buitron was born December 23, 1948. (Tr. 41). He obtained his GED and worked as a machine operator until October 2001 when his employer offered him early retirement. (Tr. 42). He testified that he had a history of disciplinary problems with his employer and his job performance had declined over time because of panic and anxiety attacks that affected his attendance and concentration. (Tr. 43). He was also written up at work because he had problems with rage and anger management. Buitron testified that he was on probation for his performance or poor attendance for ten of the thirteen years he had worked for his employer. (Tr. 45). After he stopped working, he stayed home most of the time and watched television. (Tr. 42).

Medical expert John Simonds, M.D., reviewed Buitron's medical history and testified that Buitron had no exertional limitations, but Buitron did have a history of treatment for major depression, post traumatic stress disorder related to his military service, bipolar disorder, and anxiety disorder. (Tr. 48-49). Simonds noted that Buitron showed overall improvement when he was compliant with his medication regimen, and opined that none of Buitron's mental impairment were of listing-level severity. Simonds opined that Buitron should be restricted to minimal exposure to

---

[1] Only a brief overview of Buitron's medical problems and treatment history is necessary because Buitron does not dispute the weight or attention the ALJ gave the evidence. Buitron instead contends that the ALJ's residual functional capacity assessment violates applicable law because the assessment is too vague and fails to address all areas of mental functioning relevant to a claimant's ability to work.

the public and co-workers. (Tr. 49).

Vocational expert Donna Humphries testified that Buitron's previous work as a machine operator was skilled work that required medium exertion. (Tr. 64). The ALJ asked Humphries to consider a hypothetical individual of Buitron's age, education, and work experience who was limited to work that was simple and repetitive in nature and only involved incidental contact with the public and co-workers. (Tr. 64). Humphries testified that there were several unskilled jobs available in the national economy that such an individual could perform, including machine tender (with 7,500 jobs in Texas and 150,000 jobs in the nation), hand-packing type positions (with 18,000 jobs in Texas and 350,000 jobs nationwide), and manual hand labor positions (with 70,000 jobs in Texas and one million jobs nationwide). (Tr. 64-65).

E.   ALJ DECISION

The ALJ found that Buitron had not engaged in substantial gainful activity since his alleged onset date and further found that the medical evidence established that Buitron had severe post-traumatic stress disorder versus a panic disorder, depression versus a bipolar disorder, a history of polysubstance abuse, and ischemic heart disease. (Tr. 27). The ALJ noted that Buitron had also been diagnosed with hypertension and degenerative joint disease; however, these impairments were not considered severe for purposes of the Social Security Act. With respect to Buitron's mental impairments, the ALJ founds that his condition caused moderate limitation in daily activities, social functioning, and concentration, persistence and pace, and one or two episodes of decompensation. (Tr. 32). *See* 20 C.F.R. § 404.1520a(b). The ALJ found that Buitron had no impairment or combination of impairments meeting or equaling the severity of a listed impairment. (Tr. 27).

After summarizing the objective and subjective evidence, the ALJ found that Buitron had no exertional restrictions and retained the residual functional capacity for work activity that was simple, repetitive, and routine in nature and involved only incidental contact with the public and co-workers. (Tr. 34). The ALJ accepted the vocational expert's testimony that there were jobs available for a person of Buitron's age, education, and residual functional capacity. Accordingly, the ALJ concluded that Buitron was not disabled or entitled to disability insurance benefits at any time through the date of the administrative decision. (Tr. 35-36).

F.   DISCUSSION

Buitron contends that the ALJ's determination that he can perform the jobs identified by the vocational expert is unsupported by substantial evidence and inconsistent with applicable legal standards because the residual functional capacity (RFC) assessment is insufficient. RFC reflects the most that an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a); SOCIAL SECURITY RULING 96-8p. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SOCIAL SECURITY RULING 96-8p; *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The responsibility for assessing RFC rests with the ALJ at the administrative hearing level, 20 C.F.R. § 404.1546(c), and the assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. SOCIAL SECURITY RULING 96-8p.

Buitron asserts that the ALJ reached the unfounded conclusion that Buitron could perform unskilled work without first addressing all of the areas of limitation that may be associated with a

mental impairment. The work-related mental activities generally required for competitive, remunerative work include: (1) understanding, remembering and carrying out instructions; (2) using judgment in making work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(3)-(6); SOCIAL SECURITY RULING 96-8p. A limited ability to carry out mental activities may reduce a claimant's ability to do past work or other work. 20 C.F.R. § 404.1545(c).

In his written decision, the ALJ stated that he had concluded that Buitron was capable of only unskilled work, but the ALJ made that statement in explaining why Buitron could not be expected to perform his past relevant work as a machine operator, which was a skilled job. (Tr. 34). Earlier in his decision, the ALJ had made a specific RFC assessment and found that Buitron retained the ability to perform simple, repetitive and routine work that required only incidental contact with the public and co-workers. (Tr. 34).

Buitron acknowledges that the ALJ found him capable of performing work that was simple, repetitive, and routine in nature,[2] but he asserts this assessment is inadequate because it does not address his ability to carry out instructions, use judgment, or deal with changes in a routine work setting, which are basic work-related mental activities recognized in the regulations and social security rulings. Although Buitron might prefer more specificity, the RFC assessment sufficiently addresses the areas of work-related mental activities recognized in the Commissioner's regulations

---

[2] Part of Buitron's argument is that "simple, repetitive, and routine" are so generic that they could refer to a variety of both physical and mental limitations, but a review of the ALJ's decision and the testimony of the vocational expert does not indicate that the ALJ intended to refer to anything other than Buitron's mental limitations or that the vocational expert was confused by the terms the ALJ used.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 7**

and rulings. Moreover, Buitron makes vague allegations that the ALJ did not incorporate other allegations that may be associated with a mental impairment, but he does not contend that his particular mental impairments impose any additional work-related limitations that are not accounted for in the ALJ's decision or the vocational expert's testimony

The court likewise rejects Buitron's assertion that the ALJ did not comply with Social Security Ruling 85-15, which requires an individualized assessment of Buitron's capability for basic work-related mental activities.  SOCIAL SECURITY RULING 85-15.  Social Security Rulings are published under authority of the Commissioner and are binding on the Administration.  *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(per curiam).  An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Hall*, 660 F.2d at 119, *cited in Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).  Should the agency violate its internal rules and prejudice result, the proceedings are tainted and any action taken cannot stand.  *Hall*, 660 F.2d at 119.

The ALJ's decision reflects that he engaged in the careful consideration of Buitron's work-related mental limitations that Ruling 85-15 requires. The ALJ reviewed Buitron's subjective allegations, the medical expert's testimony, and the objective medical evidence of record before finding that Buitron retained the RFC for a modified range of simple, repetitive, and routine work activity with limited contact with the public or co-workers. (Tr. 32-34).  Based on the vocational expert's testimony, the ALJ determined that there was other work available in the national economy for Buitron given his age, education, and RFC. The ALJ sufficiently complied with the requirements of Ruling 85-15.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

Buitron also argues that an ALJ cannot rely only on the four broad areas of mental functioning outlined in the Commissioner's special psychiatric review technique to draw conclusions about a claimant's work-related residual mental capacity because the broader areas of functioning relate only to the severity of an impairment for purposes of Steps Two and Three in the sequential evaluation process.[3] Buitron's statement of the law is correct. The psychiatric review technique is used to rate the severity of a given mental impairment at Steps Two and Three of the sequential evaluation process, and is not a substitute for the more detailed mental RFC assessment used at Steps Four and Five. SOCIAL SECURITY RULING 96-8p. However, a review of the ALJ's decision shows that he did not rely solely on the technique's broader areas of functioning in assessing Buitron's RFC, and did not draw conclusions about Buitron's mental limitations from application of the psychiatric review technique alone. Buitron's case citations in his brief are distinguishable on their facts.

Buitron has not demonstrated that the Commissioner's unfavorable decision is the product of legal error or unsupported by substantial evidence. The decision should be affirmed.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED

---

[3] The regulations outline a process (referred to as "the technique") to be used for evaluation of mental impairments. First, symptoms, signs, and laboratory findings are evaluated to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Once an impairment is found, the administration will rate the degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). Four broad functional areas are recognized: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, and pace; and (4) episodes of decompensation. *Id.* § 404.1520a(c)(3). After rating the claimant's functional limitations, the administration determines whether the impairment is severe or not severe given the degree of functional loss found in the four given areas. *Id.* § 404.1520a(d).

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 9**

## FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 11, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 11, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 10**

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JULY 21, 2006.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE